IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Kareem A. Tannous
815 Monroe Boulevard
King of Prussia, PA 19406

Plaintiff

v.

Cabrini University
610 King of Prussia Road
Radnor, PA 19087

Defendant

v.

The Jewish Federation of Greater Philadelphia

Defendant

Michael Balaban, its President & CEO

Defendant

Jason Holtzman, its Director

Defendant

c/o Jewish Federation of Greater Philadelphia
2100 Arch Street
Philadelphia, PA 19103

v.

STOPANTISEMITISM. ORG

1146 19th Street NW F1 5
Washington, DC 20036

Defendant

v.

JOHN AND JANE DOEs #1-20

CIVIL ACTION

NO.

JURY TRIAL DEMANDED

COMPLAINT

JURY TRIAL DEMANDED

COMPLAINT

**Dr. Kareem Tannous ("Plaintiff") by and through his undersigned counsel, hereby avers as follows:**

## INTRODUCTION

1. Plaintiff, Dr. Kareem Tannous, a Palestinian-American male and practicing Greek Orthodox Christian (hereinafter "Plaintiff" or "Dr. Tannous") has been discriminated against on account of his ethnicity, race, color, and national origin, in response to his expressed anti- Israel expression, statements opposed to governmental action, in contrast to antisemitism. As a result of such protected characteristics , Defendant Cabrini University ("Cabrini") fired Plaintiff after Defendant Jewish Federation of Greater Philadelphia through its President and CEO, Michael Balaban, and its Director, Jason Holtzman, (all together herein the "Federation Defendants") brought Plaintiff's political expression to the attention of Defendant Cabrini University.

Plaintiff brings this action pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and state law claims under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq.* which protect his civil rights, as well as other state law claims which he has against the various Defendants for breach of contract, tortious interference with Plaintiff's employment contract and business relations, defamation, and invasion of privacy (false light) all of which resulted in his firing and deprivation of what was otherwise a tenure track position.

## PARTIES

2. Plaintiff Dr. Kareem Tannous is a Palestinian-American male born on October 1, 1977, who resides in the Commonwealth of Pennsylvania. He had been continuously employed, on a year-to-year basis by Defendant Cabrini University from July of 2020, through to his firing in August of 2022. Until his firing, he was on a tenure track, having his annual contracts renewed, together with his receipt of outstanding reviews. As an assistant professor in Cabrini's

School of Business and Professional Studies, he taught Principles of Microeconomics, Principles of Macroeconomics, Principles of Finance, Managerial Accounting, Principles of Business, Quantitative Business Analysis, and Personal Finance. At no time did Plaintiff use Cabrini software or hardware to originate his tweets, nor did he indicate in his tweets that he was affiliated with Cabrini. Further, at no time did he bring his political views into his classes and at no time did any students raise questions to him about the subject of his tweets. At all times, concern and condemnation was expressed by outside parties to Cabrini's administration. As a Palestinian-American male, he is a member of a protected category of individuals under pertinent civil rights statutes and like anyone, is supposed to be able to enjoy a First Amendment Right to Free Speech.

3. Defendant, Cabrini University is an accredited residential Catholic institution of higher learning located on 112 acres in Radnor, Pennsylvania founded in 1957. According to its website it is home to 2,075 students, of which 1,550 are undergraduates and 525 are graduate. Its current interim President is Helen Drinan.

4. The "Federation Defendants" consist of individual defendants: The Jewish Federation of Greater Philadelphia, its President & CEO Michael Balaban and its Director Jason Holtzman. According to its website The Jewish Federation of Greater Philadelphia was originally founded in 1901 as the Federation of Jewish Charities. Now the Federation purports to "…remain, as ever dedicated to serving vulnerable populations, inspiring community engagement, and supporting Jewish life and learning." Highlighted in the Federation's Statement of Ethical Guidelines and Practices is a statement based on the Talmud that "'One shouldn't act one way with the mouth and another with the heart' but rather, one should avoid conflicts both in one's verbal protestations and in one's actions." Finally, its Policy Statement reads that "The

Jewish Federation of Greater Philadelphia is committed to practicing the highest standards of lawful and ethical conduct." Plaintiff disputes that these Defendants have acted legally or ethically when it came to their communication to Defendant Cabrini University regarding Plaintiff.

5.     STOPANTISEMITISM.ORG is a self-described non-profit grassroots watch-dog organization founded in 2019. It produces a blog published on the internet tracking the social media posts of individuals and "HOLDING ANTISEMITES ACCOUNTABLE AND CREATING CONSEQUENCES FOR THEIR ACTIONS."   It reaches readers within this judicial district.  It labeled Plaintiff "Antisemite of the Week" and referred to him as "Professor of Hate." It directed readers to communicate with Defendant Cabrini University regarding Plaintiff and his employment at Cabrini.

6.     Defendants John and Jane Does are unknown individuals, perhaps donors included, who each communicated with officials of Defendant Cabrini University regarding Plaintiff's employment and demanded that Cabrini breach its obligations to Plaintiff and fire him.

7     At all relevant times hereto, Defendants acted by and through their duly authorized actual and/or apparent agents and employees, acting within the course and scope of their actual and/or apparent agency and employment.

**JURISDICTION AND VENUE**

8.     This Court has federal question jurisdiction over the subject matter of Plaintiff's claims under federal law pursuant to 28 U.S.C. §1331.

9.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because the state claims and federal claims are so interrelated that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) and (c) since Plaintiff and Defendants reside and/or do business in the Eastern District of Pennsylvania and the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

## FULFILLMENT OF TITLE VII CONDITIONS

11.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII and PHRA.  Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRA") on or about September 30, 2022. The EEOC assigned him charge # 530-2023-00063.

12.     The EEOC issued a Right to Sue letter to the Plaintiff on December 27, 2022, with respect to his charge.  This lawsuit has been timely filed as it has been brought within ninety (90) days of the issuance of the Right to Sue letter.

## FACTUAL ASSERTIONS

13.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.     Plaintiff is a 45-year-old male Palestinian American who is a practicing Greek Orthodox Christian.

15.     Plaintiff has had an extensive education in business, accounting, economics and finance with a B.B.A. in General Business from Jacksonville University (Honors, Magna Cum Laude), as well as an MBA in Accounting and Finance from Jacksonville University. In addition, he has earned a D.B.A in International Business from Walden University and an MS in Applied Economics & Predictive Analysis from the University of North Dakota.

16.     Moreover, Plaintiff has had extensive experience as a professor since 2014 at a variety of institutions of higher learning, specializing in teaching business, finance, economics, and accounting.

17.     After fully vetting Plaintiff, on June 24, 2020, Defendant Cabrini University, by its Provost and Vice President for Academic Affairs, offered Plaintiff the position of Assistant Professor of Business, a tenure track position, specifying that "You will be eligible to apply for tenure in your sixth year of full-time service at Cabrini University in academic year 2025-2026.

18.     On June 26, 2020, Plaintiff accepted the offer and gave up his life and home in Florida to move to Pennsylvania to teach for Defendant Cabrini University.

19.     Plaintiff subsequently entered into a succession of one-year contracts with Defendant Cabrini for school years 20/21, 21/22, and 22/23. The contracts were reissued as a result of Cabrini's annual evaluation of tenure-track faculty members, which included Plaintiff. Participants in that process included Cabrini's President.  Plaintiff's evaluations by faculty and students were excellent.

20.     In January of 2022, Plaintiff had finished his tenure track review, passing it with flying colors, with the comment that he had well-served the students at the Business school.

21.     Subsequently, Cabrini's President at the time, Donald Taylor received a letter from Defendants Michael Balaban and Jason Holtzman on behalf of Defendant Federation, dated

February 2, 2022. ("Exhibit A") claiming that Plaintiff "is not living up to the mission statement of Cabrini University" which Federation Defendants cited as referencing "a dedication 'to academic excellence, leadership development, and a commitment to social justice."

22.     The Federation Defendants protested Plaintiff's social media posts and stated "I am absolutely appalled that a faculty member would write such reprehensible posts on International Holocaust Remembrance Day. Posts by Professor Tannous exploit the sacred memory of the Holocaust for the purpose of painting its primary victim, the Jewish people, as the 'new' oppressor in the form of the State of Israel." However, Plaitiff was not disparaging the Jewish people, but instead the policies of the State of Israel.  The Federation Defendants deliberately chose to equate Jewish people, with the State of Israel.

23.     Plaintiff was advised of the existence of this letter by Defendant Cabrini's Provost and a zoom meeting was subsequently held later in February in which the Provost and HR/DEI Director discussed the letter's contents. Plaintiff and the participants discussed his twitter posts along with the fact that many organizations, such as The Federation Defendants, conflate the religion of Judaism with the political ideology of Zionism.  Further, Plaintiff contended then and now that he has not been the first one to condemn the current state of Israel actions. He stated that he felt insulted to have been labeled an antisemite.

24.     While representatives of Defendant Cabrini asked Plaintiff to respond to the letter, he told them that he chose not to because he did not feel that he had to explain his ethnicity to anyone. Moreover, Cabrini's Faculty Handbook provides at 2.1.1 for "Academic Freedom" i.e., that "When they speak or write as citizens, they should be free from institutional censorship or discipline, but their special position in the community imposes special obligations. As scholars and educational officers, they should remember that the public may judge their profession and

their institution by their utterances. Hence, they should at all times be accurate, should exercise appropriate restraint, should show respect for the opinions of others, and should make every effort to indicate that they are not speaking for the institution." At all times, Plaintiff complied with 2.1.1. Again, at no time, did Plaintiff indicate any affiliation with Cabrini University in his tweets.

25. In point of fact, Plaintiff never used Cabrini's software or hardware system for his political speech and never identified himself in his tweets as being affiliated with Cabrini University. Importantly, at no time did he introduce his political views during his teaching, nor did he have conversations whatsoever with students about what was being complained about by outsiders. Importantly, at no time did students raise objections.

26. After this zoom meeting, nothing was raised for the remainder of the semester by Defendant Cabrini. Plaintiff thought there was no issue remaining and that this was the end of the matter . All the while, Plaintiff continued to address his views on twitter from his personal account away from Defendant Cabrini.

27. In July, 2022 Plaintiff noticed that he was being tagged on twitter by STOPANTISEMITISM.ORG, labeling him as the "Antisemite of the Week" and also as a "Professor of Hate", retweeting various statements by him that may be considered anti-Zionist and anti- Israel, but not antisemitic.

28. The STOPANTISEMITISM.ORG piece was dated July 2, 2022 ("Exhibit B") containing various tweets by Plaintiff, and it included a request that readers submit an ethnic discrimination complaint and "email Cabrini University's President Helen Drinan (mailto:hd7007@cabrini.edu) to express your concern about Professor Kareem Tannous's ongoing antisemitism. Someone with such intrinsic hatred often manifests their racism into real

world situations and neither Jewish students nor faculty should have to be subjected to Kareem Tannous' bias." In point of fact, neither students nor faculty were subjected to any bias by Plaintiff.

29.     The STOPANTISEMITISM.ORG piece eventually came to the attention of Cabrini President Helen Drinan and Chief of Staff and SR. VP of Strategic Initiatives, Brian Eury. President Drinan emailed Plaintiff stating that she needed to meet with Plaintiff. When Plaintiff said that he was in Florida tending to a family health emergency, Ms. Drinan enlisted Dean Tim Mantz to insist that the meeting take place.

30.     A zoom meeting eventually took place on July 20, 2022 with Plaintiff, President Drinan, Cabrini's HR Director and a representative of Palestine Legal, Ms. Amal Thabateh,, in attendance. The matter of Plaintiff's tweets was raised by Cabrini. Ms. Thabateh stated that she did not find the tweets to be hate speech in the context of which they were posted. President Drinan refused to read them in the proper context.

31.     Moreover, people criticize policies of governments all the time, without being accused of being against a particular people, let alone losing their employment. For example, Professor of Peace and Conflict Studies, Sa'ed Atshan, in an article published by the Philadelphia Inquirer on March 19, 2023, made the following observation: "There is a pattern that we see which is that criticism of Israel state and its violations of human rights abuses gets conflated with Anti- Semitisim. That, I think is very dangerous." In that article he went on to state that he is critical of Saudi Arabia and its human-rights violation, but would not want that conflated with Islamophobia.

32.     In that meeting with Plaintiff, Cabrini officials brought up the prior Federation letter. Plaintiff responded that he thought that those issues had been put to rest.

33.     During that same meeting, Plaintiff asked if there were any open complaints or investigations from within the university about him, to which both the President and HR Director responded "no."

34.     On August 5, 2022, Defendant Cabrini, by its Interim-President, transmitted a letter to Plaintiff beginning with the statement "I write to inform you that, for the reasons we discussed on July 20, 2022 we have decided to terminate your employment at Cabrini University, effective August 12, 2022." ("Exhibit C")

35.     Said notification lacked any explanation of what the "reasons" were. According to the Faculty Handbook, a statement of reasons, if requested, should precede termination. Notwithstanding, Plaintiff was told during the above-referenced meeting that the reason for his termination was due to outside parties insisting that he be terminated for his wrongfully labeled antisemitic tweets. Presumably this included named defendants as well as the Doe defendants.

36.     Further, the Cabrini Handbook provides that the "Burden of proof rests with the University in cases where a faculty member is dismissed or suspended for conduct reasons or cause that does not include financial exigencies, financial stress, or closure or reduction of programs." Defendant Cabrini failed when it came to that burden of proof. Further, Plaintiff received nothing in the way of a due process pre-termination hearing.

37.     Plaintiff exhausted his administrative remedies by filing a grievance which was disallowed by the University Grievance Committee, as Cabrini professes not to handle matters of discrimination.

38.     As an American born citizen of Palestinian descent, Plaintiff came to feel discriminated against as a result of his color, race and ethnicity.

39.     In January of 2023, Plaintiff was able to obtain a non-tenure track adjunct professor position at Gwynedd Mercy University, which paid all of $2,500. He was summarily terminated after teaching his first class, as a result of defendants' uproar over his tweets. In a letter dated January 18, 2023 the Assistant Vice President for Human resources advised him that "Last week in advance of your first class on campus, we received a complaint from a community member who shared an article written about you suggesting that your tweets were anti-Semitic."

40.     Despite his background, education, and experience. Plaintiff has not been able to receive a position of any sort in academia.

41.     Plaintiff has a personal Twitter account, which he uses to share thoughts and ideas with his "followers"; i.e., other Twitter users who voluntarily sign up to receive his tweets (friends and family). Twitter is a forum designed to facilitate instantaneous commentary and reactions to current events.  In fact, Twitter describes its mission as to "give everyone the power to create and share ideas and information instantly, without barriers." Exchanges are informal and have a limit on characters used. The result is that they are not designed to capture nuance and subtlety. Plaintiff uses twitter to share his ideas and provoke thought.

42.     The speech at issue consists of messages critical of Israeli policy posted to Plaintiff's personal twitter account. Plaintiff recalls posting public pro-Palestinian tweets since approximately 2009, well before his tenure at Cabrini, on roughly a weekly or monthly basis, depending on events which took place in the Middle East. Plaintiff has taken issue with Israeli state policy, not at any religious or ethnic group. Neither his views, nor his tweets are antisemitic Strong language and extreme comparisons aside, none of his tweets targeted criticism at Judaism or the Jewish people. Further, defendants have chosen to cherry-pick from amongst those tweets.

As a result of its vetting process, Defendant Cabrini knew or should have known of Plaintiff's tweets.

43.     During his tenure at Cabrini, his tweeting was not an issue until the Federation Defendants brought it to Cabrini's attention. None of his students had ever mentioned his tweets to him and he never repeated them or his political ideology to them or his Cabrini colleagues for that matter.

44.     Through its action of terminating Plaintiff, Defendant Cabrini not only violated Plaintiff's civil rights, but they also ignored and trampled longstanding principles of academic freedom and shared faculty-administration governance generally characteristic of institutions of higher learning in America. What is more, Cabrini ignored its own professed adherence to the Academic Freedom provision contained in its own Faculty Handbook which is set forth at 2.1.1 C as hereinbefore quoted  in paragraph 24 of this Complaint.

45.     Further, Cabrini's Faculty Handbook contains the statement that "The Faculty and Administration of Cabrini University support the 1940 Statement of Principles on Academic Freedom and Tenure published by the American Association of University Professors (AAUP)" quoting as follows:

> The purpose of this statement is to promote public understanding and support of academic freedom and tenure and agreement upon procedures to ensure them in colleges and universities.  Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition.

46.     What is more, The United States Supreme Court has underscored the protection of freedom in an academic setting, vital to American universities' unique commitment to fostering free thought and advancing knowledge. "Our Nation is deeply committed to safeguarding

academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom. The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Keyishian v. Board of Regents of University of State of New York*, 385 US. 589,603 (1967) (internal citations omitted.)

47. Thanks to the named Defendants and the Doe Defendants, Professor Tannous remains without a job, with his academic career in tatters, and without an institutional association that would allow him to conduct his teaching, higher education service, and research.

**COUNT I**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

**Kareem Tannous vs. Cabrini University**

48. Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

49. Defendant Cabrini has discriminated against Plaintiff by denying him the same rights as are enjoyed by others with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with the University, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

50. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

51. By reason of Defendant Cabrini's discrimination, Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and emotional distress, reasonable attorney fees and costs, as well as punitive damages.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Cabrini and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT II

## ETHNICITY, RACE, COLOR, AND RELIGIOUS DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*

**Kareem Tannous vs. Cabrini University**

52. Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

53. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful for employers to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of ethnicity, race and or color.

54. Discrimination on the basis of ethnicity, race and/or color that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her ethnicity, race or color; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability

exists. In the totality of circumstances, when it comes to Plaintiff's treatment, the foregoing five elements are established.

55.     Defendant retaliated against Plaintiff on account of his protected status as a Palestinian American for his tweets, and as a result for his defense to complaints about those tweets, thus constituting a hostile work environment. Due to his status as a Palestinian American, Defendant presumed that his tweets critical of Israel were actually criticism of Jews. This was not true and involves two distinct concepts.

56.     Defendant is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

57.     Defendant is liable for the acts of management and Plaintiff's co-workers, because it knew of the existence of a discriminatory and a hostile work environment but allowed the illegal acts and practices to continue, in fact retaliating against Plaintiff.

58.     Defendant is liable for the acts alleged herein because of its culture of encouraging discrimination, harassment, and retaliation.

59.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of his color, ethnicity and  race,  and has retaliated against him for standing up for himself, in deprivation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

60.     Defendant unlawfully retaliated against Plaintiff due to his tweets and for his defense thereof.

61.     The described unlawful employment practices by Defendant were intentional, deliberate, willful and were with malice or reckless indifference to Plaintiff's rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

62. By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Cabrini and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

**COUNT III**

**ETHNICITY, RACE, COLOR, AND RELIGIOUS DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**

**Kareem Tannous vs. Cabrini University**

63 Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

64. This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of ethnicity, race and/or color..

65 Plaintiff, as a Palestinian American, is in a protected class because of his ethnicity, race, and color.

66. Based upon the foregoing facts, Defendant Cabrini has discriminated against Plaintiff and has deprived him of his rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

67.     The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect his status as an employee because of his ethnicity, race, and color.

68.     Discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act.

69.     With respect to allegations of discrimination, hostile environment and retaliation, Defendant is liable for the acts of its supervisory and management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

70.     Defendant is liable for the acts alleged herein because its managers and supervisors established its corporate culture which encouraged racial and religious discrimination as well as a hostile work environment.

71.     The described unlawful employment practices and actions by Defendant were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania.  These unlawful acts were committed because of his ethnicity, race, and color, and the fact that he stood up for himself in opposition to the criticism of his tweets.

72.     By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including

any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## IV. BREACH OF CONTRACT

### Kareem Tannous vs. Cabrini University

73.   Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

74.   Plaintiff was on a tenure track and under contract for the 2022/2023 school year.

75.   Plaintiff was also successfully headed next for eligibility for a three-year contract upon completion of the contract for the 2022/2023 year.

76.   Defendant Cabrini fired Plaintiff before his 2022/2023 contract was concluded..

77.   Consistent with the provisions of its annual contracting process and its Handbook, Defendant Cabrini made a promise of continued employment consistent with an obligation of good faith and fair dealing, which in context also included complying with general principles of academic freedom and AAUP's 1940 *Statement of Principles of Academic Freedom and Tenure.*

78.   Plaintiff substantially performed all of the contractual obligations that were required of him at the time of the breach by Defendant.

79.   Defendant Cabrini breached the contract by firing Plaintiff.

80.   Plaintiff relied upon Defendant Cabrini's promises and policies of free speech to his detriment, suffering damages above and beyond his contractual salary, as a result of this breach of good faith and fair dealing as to the terms and conditions of that contract.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Cabrini and requests an award of damages including, but not limited to compensatory damages,

including any and all recoverable economic and noneconomic loss and other relief as permitted under the law and as this Court deems just and proper.

## V. TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RFLATIONS

**Kareem Tannous vs. The Jewish Federation of Greater Philadelphia, Michael Balaban and Jason Holtzman, STOPANTISEMITISM.ORG, and John and Jane Does**

81.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

82.     The tort of interference with existing contractual relationships is governed by section 766 of the Restatement (Second) of Torts, which the Pennsylvania Supreme Court has adopted in *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978)

83.     The necessary elements of this cause of action are:

1) the existence of a contractual relationship between the complainant and a third party;

2) an intent on the part of the defendant to harm the plaintiff by interfering with the contractual relationship;

3) the absence of privilege or justification on the part of the defendant; and

4) the occasioning of actual damage as a result of defendant's conduct. *Walnut St. Associates, Inc. v. Brokerage Concepts, Inc.*, 2009 PA Super 191, 982 A.2d 94, 97-98 (Pa Super Ct. 2009) aff'd ,610 Pa. 371, 20 A.3d 468 (2011)

84.     The Jewish Federation of Greater Philadelphia, Michael Balaban and Jason Holtzman by their letter of February 2, 2022, to Cabrini's President (Exhibit A), including

calling Cabrini "to take action against Plaintiff for using such offensive antisemitic rhetoric.",

has fulfilled the necessary elements of this cause of action and caused Plaintiff harm.

85.     Similarly, by branding Plaintiff as an "Antisemite of the Week" and Professor of

Hate" in a piece dated July 2, 2022 and still on-line, ("Exhibit B")  STOPANTISEMITISM.ORG

has similarly fulfilled the necessary elements of this cause of action and has caused Plaintiff

harm.  Moreover, it specifically called for the reader's help to submit an ethic discrimination

complaint and "email Cabrini University's President Helen Drinan (mailto:hd7007@cabrini.edu)

to express your concern about Professor Kareem Tannous' ongoing antisemitism" and concludes

by stating that " Someone with such intrinsic hatred often manifests their racism into real world

situations and neither Jewish students nor faculty should have been subjected to Kareem

Tannous' bias."

86.     As a result of Plaintiff's being told by agents of Defendant Cabrini that

complaints by others were the reason for his firing, the John and Jane Does are named as parties

whose identities will be learned through discovery.

WHEREFORE, Plaintiff demands judgment in his favor and against the above-named

Defendants and requests an award of damages including, but not limited to compensatory

damages, including any and all recoverable economic and noneconomic loss, punitive damages,

reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court

deems just and proper.

## VI. DEFAMATION

### Kareem Tannous vs. Stop Antisemitism.org and John and Jane Does

87.     Plaintiff restates and realleges all previous paragraphs as though fully set forth

herein.

88.     Defendant STOPANTISEMITISM.ORG's statements ("Exhibit B"), innuendo and implication regarding Plaintiff are false and defamatory and were published with knowledge of their falsity or with reckless disregard for their truth or falsity.

89.     Defendant STOPANTISEMITISM.ORG's false and defamatory statements, innuendo and implications regarding Plaintiff were published with actual malice to the world at large through the internet.

90.     Defendant STOPANTISEMITISM.ORG's statements, innuendo and implications applied to Plaintiff and were understood by the reader as applying and intending to apply to Plaintiff.

91.     Defendant STOPANTISEMITISM.ORG's statements, innuendo and implication concerning Plaintiff were defamatory and were understood as such by those who read them.

92.     Defendant STOPANTISEMITISM.ORG's statements, innuendo and implications concerning Plaintiff amounted to accusations of the likelihood of criminal conduct and were therefore defamatory per se.

93.     Defendant STOPANTISEMITISM.ORG's statements, innuendo and implications concerning Plaintiff were not privileged.

94.     Defendant STOPANTISEMITISM.ORG had knowledge of and/or acted in reckless disregard as to the falsity of the publicized statements, innuendo and implications and the false light in which Plaintiff would be placed. What was especially offensive was labeling Plaintiff as the "Antisemite of the Week" and "Professor of Hate," the statement that "it's extremely concerning to see Cabrini employ someone as hateful and bigoted as Kareen Tannous", the suggestion that the readers submit an ethnic discrimination  complaint, the further suggestion that the readers email Cabrini's President "to express your concern about Professor

Kareem Tannous' ongoing antisemitism", and further stating that " Someone with such intrinsic hatred often manifests their real world situations and neither Jewish students nor faculty should have to be subjected to Kareem Tannous' bias."

95. Defendant STOPANTISEMITISM.ORG knew that the false and defamatory statements would damage the reputation of and cause harm to Plaintiff.

96. Defendant STOPANTISEMITISM.ORG acted in an outrageous, malicious, wanton, reckless, willful, and oppressive manner and with common law malice, warranting the imposition of punitive damages.

97. Upon information and belief, the statements made by the John and Jane Doe Defendants to Defendant Cabrini were knowingly false and defamatory, causing harm to Plaintiff.

WHEREFORE, Plaintiff demands judgment against these defendants for compensatory damages in excess of compulsory arbitration limits, exclusive of interests and costs, and punitive damages in an amount which will punish the defendant and deter it and others similarly situated from the commission of like acts in the future, and such other legal and equitable relief as the Court deems appropriate.

## VI. INVASION OF PRIVACY (FALSE LIGHT)

### Kareem Tannous vs. STOPANTISEMITISM.ORG and John and Jane Does

98. Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

99. Defendant STOPANTISEMITISM.ORG's statements, innuendo and implications concerning Plaintiff recklessly and/or maliciously place Plaintiff in a false light, highly offensive to a reasonable person.

100. Defendant STOPANTISEMITISM.ORG had knowledge of and/or acted in reckless disregard as to the falsity of the publicized statements, innuendo and implications and the false light in which Plaintiff would be placed. What was especially offensive was labeling Plaintiff as the "Antisemite of the Week" and "Professor of Hate," the statement that "it's extremely concerning to see Cabrini employ someone as hateful and bigoted as Kareen Tannous" , the suggestion that the readers submit an ethnic discrimination complaint, the further suggestion that the readers email Cabrini's President "to express your concern about Professor Kareem Tannous' ongoing antisemitism", and further stating that " Someone with such intrinsic hatred often manifests their real world situations and neither Jewish students nor faculty should have to be subjected to Kareem Tannous' bias."

101. Defendant STOPANTISEMITISM.ORG's statements innuendo and implications concerning Plaintiff were not privileged.

102. Defendant STOPANTISEMITISM.ORG acted in an outrageous, malicious, wanton, reckless, willful, and oppressive manner and with common law malice, warranting the imposition of punitive damages.

103. Upon information and belief Defendants John and Jane Does, by their statements to Defendant Cabrini constituted an invasion of privacy that placed Plaintiff in a false light.

WHEREFORE, Plaintiff demands judgment against these defendants for compensatory damages in excess of compulsory arbitration limits, exclusive of interests and costs, and punitive damages in an amount which will punish the defendant and deter it and others similarly situated

from the commission of like acts in the future, and such other legal and equitable relief as the Court deems appropriate.

**JURY DEMAND**

The Plaintiff demands a trial by jury of eight on all issues triable by a jury.

**CERTIFICATION**

I hereby certify that Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**MARK D. SCHWARTZ, ESQUIRE**

By: /s/Mark D. Schwartz

Mark D. Schwartz, Esquire (Pa ID #30527)
300 Sandcastle Drive
BRYN MAWR, PA 19010
Telephone & Fax 610 525-5534

DATED: March 22, 2023

Attorneys for Plaintiff Kareem Tannous



Jewish Federation
of Greater Philadelphia

Donald Taylor, PhD
President, Cabrini University
pres@cabrini.edu
610-902-8734

Michael Balaban
President and CEO, Jewish Federation of Greater Philadelphia
MBalaban@jewishphilly.org
215-832-0551

BOARD OF DIRECTORS
OFFICERS

Board Co-Chairs
David J. Adelman
Gail S. Norry

Immediate Past Board Chair & Governance
Susanna Lachs Adler

President and CEO
Michael Balaban

Campaign
Sherrie R. Savett

Endowments
Mark Fishman

Planning and Resourcing
Holly Nelson

Vice Chairs
Marjorie Honickman
Milton S. Schneider

Treasurer
David G. Gold

Secretary
Richard J. Green

February 2, 2022

Dear President Taylor,

As President and CEO of the Jewish Federation of Greater Philadelphia, I am writing today to inform you that a member of your staff, Professor Kareem Tannous, is publicly spreading anti-Semitic and anti-Israel commentary and making posts in support of the destruction of the State of Israel.

The Jewish Federation of Greater Philadelphia serves the Jewish community in Philadelphia and the surrounding four counties. As the leader of the Jewish Federation, I work daily to ensure that Jewish life will continue to flourish safely in the Philadelphia area with the focus on supporting social welfare, social services, and educational needs in our communities. The Jewish community in Greater Philadelphia and others across the country feel a tremendous amount of fear and angst from watching the recent hostage situation unfold at Congregation Beth Israel in Colleyville, Texas. Following a number of violent antisemitic attacks on the American Jewish community in recent years, many of our community members are left wondering if similar violence could happen in their neighborhood.

The mission statement of Cabrini University references a dedication "to academic excellence, leadership development, and a commitment to social justice," and I hope that the spirit of striving for academic excellence and social justice will be upheld concerning this matter.

Professor Tannous is not living up to the mission statement of Cabrini University by sharing such appalling misinformation on his social media. One can only wonder if he is also sharing similar statements with his students and misrepresenting the values of the University.

EXHIBIT
ALL-STATE LEGAL®
1

I am absolutely appalled that a faculty member would write such reprehensible posts on International Holocaust Remembrance Day. Posts by Professor Tannous exploit the sacred memory of the Holocaust for the purpose of painting its primary victim, the Jewish people, as the "new" oppressor in the form of the State of Israel. By making false Holocaust analogies, Professor Tannous trivializes the memory of the Holocaust and grossly distorts the reality of what happened in Nazi Germany and of the Israeli-Palestinian conflict.

Cabrini University should not hesitate to take action against Professor Tannous for using such offensive antisemitic rhetoric.

In the recent posts that I am referring to, Professor Tannous writes things such as: "Tired of hearing about the #holocaust when the descendants of these same people are killing my people indiscriminately", "#zionism is a disease #freepalestine is the cure" and "How is a certain group [Jewish people] going to have a day of 'remembrance' when they killing people left and right with impunity?"

Tannous also reposted a tweet from prominent anti-Israel activist, Ali Abunimah, in which he states: "Today is the International Day of This Brutal and Shameless Apartheid Regime Exploiting the Memory of Jews Exterminated by the Nazis to Whitewash its Racist Regime of Occupation, Murder, Land Theft and Settler-Colonization Against Palestinians. #WeRemember"

The United States is currently experiencing a drastic rise in all forms of hatred, including antisemitism, and as we recently saw at Congregation Beth Israel in Colleyville, Texas, words and conspiracy theories can lead to very dangerous actions if they go unchecked. Our country is experiencing the worst wave of sustained and violent antisemitism that it has ever seen and someone like Professor Tannous, who holds a public position educating future leaders of this country, should not be given a free pass to spread hatred and lies.

Cabrini University should act responsibly and censure Professor Tannous for spreading hatred and dangerous misinformation to the public.

I have included copies of some of the posts for your review.

I look forward to hearing from you about this most important matter.

Sincerely,

Michael Balaban
President & CEO

Jason Holtzman
Jason Holtzman
Director, Jewish Community Relations Council

2100 Arch Street
Philadelphia, PA 19103

215.832.0500
info@jewishphilly.org

jewishphilly.org

STOP

ABOUT
ABOUT US (/ABOUT-US)
IHRA DEFINITION OF ANTISEMITISM (/DEFINITIONS)
MEDIA INQUIRIES (/MEDIA)
NEWS
ANTISEMITIC INCIDENTS 2022 (/ANTISEMITIC-INCIDENTS-2022)
ANTISEMITIC INCIDENTS 2021 (/ANTISEMITIC-INCIDENTS-2021)
ANTISEMITIC INCIDENTS 2020 (/ANTISEMITIC-INCIDENTS-2020)
ANTISEMITIC INCIDENTS 2019 (/ANTISEMITIC-INCIDENTS-2019)
OPEN LETTER TO FACEBOOK (/OPEN-LETTER-TO-FB)
POLICY NEWS (/POLICY-UPDATES)
PRESS (/PRESS)
ANTISEMITE OF THE WEEK (/ANTI-SEMITE-OF-THE-WEEK)
REPORTS
2021 ANNUAL REPORT (/S/SA-2021-REPORT.PDF)
2021 ANTISEMITISM IN CORPORATE AMERICA (/S/ANTISEMITISM-IN-CORPORATE-AMERICA-2021.PDF)
2020 ANNUAL REPORT (/S/SAAR-V3.PDF)
2019 THE NEW ANTISEMITES REPORT (HTTPS://DRIVE.GOOGLE.COM/FILE/D/1EONU3D7K5RQY6LLCHEMABSA3XNH6MJLX/VIEW?USP=SHARING)
PETITIONS
PAST PETITIONS (/PAST-PETITIONS)
DONATE (/DONATE)
SUBSCRIBE (/SUBSCRIBE)
SEARCH (HTTPS://WWW.STOPANTISEMITISM.ORG/SEARCH)

REPORT AN INCIDENT (/REPORT-AN-INCIDENT)

July 2, 2022 (/antisemite-of-the-week-8/kareem-tannous-professor-of-hate)

# Kareem Tannous - Professor of Hate (/antisemite-of-the-week-8/kareem-

EXHIBIT
ALL-STATE LEGAL®
2

# tannous-professor-of-hate)

Kareem Tannous (https://www.linkedin.com/in/ktannous/) is an Assistant Professor of Business at Cabrini University (http://cabrini.edu/about/departments/academic-departments/school-of-business-and-professional-studies/business/faculty/kareem-tannous-dba-mba) in the Philadelphia area who spews horrifying antisemitism on Twitter in his spare time.

Tannous spreads conspiracy theories of Jewish control, refers to the Jewish people and nation as Nazis, incites violence, and calls the eradication of Israel – which currently boasts a current population of approximately seven million Jews, who account of nearly 50% of the world's Jewish population.

On April 28th Tannous implied "zio" (a term used to describe Jews by radicals) control the U.S. government with the end goal of supplying money to "Ukraine,

NATO, and Israel to arm NAZIs (https://archive.ph/EkxGd)".

Kareem Tannous كريم طنوس
@GenerousAdvice

zio controlled USGOV politicians promise to cancel 2T$ in student debt so that #donkeydemocrats would elect them yet they sent that 2T$ to Ukraine, NATO, and Israel to arm NAZIs.

Hey #WeThePeople, how you doing?

Israel and Ukraine are societal cancers and must be eradicated.

9:41 AM · Apr 28, 2022 · Twitter for iPhone

(https://archive.ph/EkxGd)

The following month Tannous again referred the Jewish people and nation to Nazis tweeting - "Today in Zionazi Ukraine, one upping zionazi Israel (https://archive.ph/f47om)". According to the (IHRA) International Holocaust Remembrance Alliance working definition of antisemitism - adopted by the U.S. Department of State - defines such comparisons as antisemitic.

Kareem Tannous كريم طنوس
@GenerousAdvice

Today in zionazi Ukraine, one upping zionazi Israel: Attacking Clergy

(https://archive.ph/f47om)

Tannous shamefully denies the Jewish right to self-determination and attempts to erase our historical ties to the Jewish state, tweeting such vile statements such as

"Israel has zero right to exist" (https://archive.ph/Hswli) and "take your antisemitic bs back to Europe," a common antisemitic trope used by white supremacists and other radicals to distort Jews' ethnicities.

Kareem Tannous كريم طنوس
@GenerousAdvice

Where is this 'Israel' you speak of? All the maps have Palestine Take your antisemitic bs website back to euro or wherever it is that you are from bcz it certainly ain't Palestine #zionism is the disease #FreePalestine is the cure dismantle #ApartheidIsrael by any means necessary

(https://archive.ph/DhSFw)

Kareem Tannous is a fervent supporter of the antisemitic Boycott Divest Sanctions (BDS (https://honestreporting.com/bds-myths-and-facts/?gclid=Cj0KCQjwtvqVBhCVARIsAFUxcRtLklPn5rd1u0mJfKKHKwsG6YuGihYtXyV-tPdcvXMdm9vZ-23czwoaApoJEALw_wcB)) movement and often calls for a "Free Palestine" by "any means necessary (https://archive.ph/DhSFw)" a phrase often used to incite and green-light violence against Jews.

Kareem Tannous كريم طنوس
@GenerousAdvice

#BDS are basic rights. This 🤡 supports the ethnic cleansing and occupation of Palestinians. Is there a pre1948 map (non-biblical) of 'israel'? Asking for friends.

#zionism is the disease
dismantling #apartheidisrael is the cure

#FreePalestine by any means necessary!!

(https://archive.ph/65Q7E)

Cabrini University's Diversity, Equity, and Inclusion pledge (https://www.cabrini.edu/contentassets/5e20dbd6de824ef58f8ac0af8eb1c6e5/2021-22-cabrini-diversity-equity-and-inclusion-advisory-council-strategic-plan-and-recommendations41.pdf) aspires to achieve the highest level of academic excellence and to strengthen its inclusiveness. While the school's goals appear admirable on paper, it's extremely concerning to see Cabrini employ someone as hateful and bigoted as Kareem Tannous.

We need **YOUR** help - submit an ethnic discrimination complaint here (https://secure.ethicspoint.com/domain/en/report_information.asp?clientid=21195&violationtypeid=108547&locationid=-1) and email Cabrini University's President Helen Drinan (mailto:hd7007@cabrini.edu) to express your concern about Professor Kareem Tannous' ongoing antisemitism.

Someone with such intrinsic hatred often manifests their racism into real world situations and neither Jewish students nor faculty should have to be subjected to Kareem Tannous' bias.

0 Likes Share

Newer Post
Kendra Lara Hicks - Boston's "Sorry Not Sorry" Councilor (/antisemite-of-the-week-8/kendra-lara-hicks-bostons-sorry-not-sorry-councilor)

Older Post
Anna Rajagopal - The Jew Bashing Convert (/antisemite-of-the-week-8/anna-rajagopal)

Stopantisemitism.org ©2019



CABRINI
UNIVERSITY

LIVE WITH PURPOSE

OFFICE OF THE PRESIDENT

August 5, 2022

Via Priority Mail Express, Signature required

Kareem Tannous, DBA, MBA
2941 Mc Crone Way
Jacksonville, FL 32216

Dear Dr. Tannous:

I write to inform you that, for the reasons we discussed on July 20, 2022, we have decided to terminate your employment at Cabrini University, effective August 12, 2022.

We will pack up your personal effects and have them sent to the above address. Please return any Cabrini University property in your possession, including your laptop, keys and ID badge by August 22, 2022. Please arrange for the return of these items with Nikki Gillum-Clemons, Director, Human Resources.

Your final paycheck will be paid on the next regular payday after August 12 and will include your salary through August 12, 2022.

Under separate cover, you will receive information regarding health benefits coverage and your eligibility for continuation of health insurance after August 31, 2022. Your participation in any other Cabrini University employee benefit programs will terminate on August 12. If you have any questions, please follow-up with Director, Human Resources, Nikki Gillum-Clemons at 610-902-8206 or at ng7009@cabrini.edu.

Sincerely,

Helen G. Drinan

Helen G. Drinan
Interim President

Copies: Nikki Gillum-Clemons, Director, Human Resources
Michelle-Filling Brown, PhD, Associate Provost

610 KING OF PRUSSIA ROAD | RADNOR, PENNSYLVANIA 19087-3698 | 610.902.8200 | FAX: 610.902.8204

CABRINI.EDU

EXHIBIT
3
ALL-STATE LEGAL®

**VERIFICATION**

I, Kareem A. Tannous do hereby verify that I am the Plaintiff in this matter and that the facts contained in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge, information and belief. I further understand that these statements are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

3/22/2023
DATE

Kareem A. Tannous